IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

─────────────────────────────────────────────────────────

LENA MUHAMMAD,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        No. 18-cv-2857-MSN-tmp
                                        )
ALEX M. AZAR II, Secretary of           )
the U.S. Department of Health           )
and Human Services, in his              )
official capacity; DANIELLE W.          )
BARNES, Commissioner of the             )
Tennessee Department of Human           )
Services, in her official               )
capacity; and BASEM GIRGIS,             )
an official with the Tennessee          )
Department of Human Services,           )
in his official capacity,               )
                                        )
        Defendants.                     )

─────────────────────────────────────────────────────────

### REPORT AND RECOMMENDATION

─────────────────────────────────────────────────────────

Before the court by order of reference is defendants Danielle W. Barnes and Basem Girgis's Motion to Dismiss. (ECF Nos. 19 & 23.) For the following reasons, it is recommended that the Motion to Dismiss be granted in part and denied in part.

### I.    PROPOSED FINDINGS OF FACT

Plaintiff Lena Muhammad filed the instant complaint on December 17, 2018. (Complaint, ECF No. 1.) The complaint alleges several causes of action against defendants Alex M. Azar II, the

-1-

Secretary of the United States Department of Health and Human Services, Danielle W. Barnes, the Commissioner of the Tennessee Department of Human Services ("TDHS"), and Basem Girgis, an employee of TDHS, all in their official capacities.[1]  The following findings of fact are based on the well-pleaded allegations in the complaint and the exhibits attached to the complaint.

In 1993, when Muhammad (then known as Lena Boyd) was 22 years old, she pleaded guilty in California state court to "assault with deadly weapon by force likely to produce great bodily injury" (California Penal Code § 245) and "discharge of firearm at an inhabited dwelling house, occupied building, vehicle, aircraft, inhabited housecar or inhabited camper" (California Penal Code § 246). (ECF No. 1 at 4.)  The guilty plea, which is attached to the complaint as Exhibit 3, indicates that "on [February] 20, 1993 in Orange County I committed an assault on Andra Boyd with a firearm and while he was in a motor vehicle." (Id. at 33.)  The criminal charges stemmed from an incident that involved her "shooting at, but missing, her abusive then-husband." (Id. at 4.)  Muhammad was convicted of these felony offenses and served a mandatory two-year

_____

[1]According to the complaint, Girgis is a paralegal and Licensing Supervisor Designee with TDHS. (ECF No. 1 at 2.)  According to defendants, Girgis is the Program Coordinator for Child and Adult Care Licensing. (See Defs.' Mem. of Law in Support of Mot. to Dismiss, ECF No. 20 at 2 n.1.)  For purposes of ruling on this Motion to Dismiss, the court will accept as true the complaint's allegations regarding Girgis's job title, although it is worth noting that this discrepancy is immaterial to the issues raised in the motion.

prison sentence.   Since her release from prison, she has not had any other criminal convictions. (Id.)

In 2006, Muhammad applied with the State of Tennessee for a waiver that would allow her to work at a child care facility. (Id.) Specifically, she filed an application with TDHS pursuant to Tenn. Code Ann. 71-2-507(f), which establishes a procedure for obtaining a waiver for persons who would otherwise be excluded under state and federal law from working at or operating a child care facility based on their criminal background. (Id. at 5.)   Following a hearing before a three-member panel of the TDHS Criminal Exclusion Advisory Committee, Muhammad received a letter dated December 4, 2006, granting her the waiver and stating that "the Department has determined that you have established extenuating circumstances which would clearly warrant a waiver[.]" (Id. at 5, 35.)   In 2007, Muhammad opened Lena's Little Ones, a child care facility which she operated out of her home. (Id. at 3.)   In 2010, Muhammad opened a second child care facility next door to her home, Lena's Little Ones II. (Id. at 4.)   TDHS sent her letters in March 2010 and October 2011, confirming that she was not excluded from working at these two facilities. (Id. at 5, 37, 39.)   Since opening these facilities, Muhammad has been in full compliance with TDHS's requirements and has received the highest "Three Star" designation every year. (Id. at 4.)

On July 31, 2018, TDHS sent Muhammad a letter stating that it

-3-

would be making changes to the waiver review process in order to implement the federal Child Care and Development Block Grant ("CCDBG") comprehensive background check requirements. (Id. at 5, 42.)  The letter stated:

> CCDBG provisions include requirements for excluding individuals convicted of particular crimes from working in child care facilities, but the provisions for granting waivers for excludable CCDBG offenses are now limited to felony drug offenses that occurred more than five years ago and misdemeanors and felonies not included in the list below.
>
> Below is a listing of the excludable offenses under CCDBG that do NOT include a provision for requesting a waiver:
>
> . . .
>
> - A felony consisting of: . . . Physical assault or battery;
>
> . . .
>
> Existing waivers for excludable offenses not eligible for a waiver under CCDBG will not be extended when the individual is reprinted (all staff are reprinted every five years).

(Id. at 42.)  According to the complaint, the July 31, 2018 letter did not "put [Muhammad] on notice that the waiver she had had since 2006 might be revoked.  The crimes listed in the letter did not appear to apply in any way to her 1993 conviction." (Id. at 6.)

On September 4, 2018, TDHS sent a letter to Muhammad stating that, effective immediately, she would be excluded from "operating, working in, volunteering at, providing substitute services to, residing in, or having any access whatsoever to children/adults in a child care agency/adult day care agency at any time that

-4-

children/adults enrolled in the agency are present," due to her
criminal conviction. (ECF No. 1 at 6, 45.)  The letter informed
Muhammad that she could (1) appeal the exclusion and receive an
administrative hearing, but only on grounds that "you are not the
person identified in the records used to determine that you should
be excluded" or "the basis for the exclusion has been dismissed,
resulted in an acquittal, or expunged"; and/or (2) "ask to receive
an administrative *waiver* that will exempt you from exclusion." (Id.
at 46-47) (emphasis in original).  Regarding the administrative
waiver, the letter advised that "[a]s part of the waiver request,
you may present information and documentation that demonstrates
that there are extenuating circumstances that provide a good reason
to waive the exclusion." (Id. at 47.)  The letter stated that an
"advisory committee will consider whether those circumstances
clearly warrant a waiver of the exclusion and will make a
recommendation to the Director of Child and Adult Care Licensing,"
and that she could "appeal a decision by the Director of Child and
Adult Care Licensing to reject a waiver request and receive a
hearing under the Uniform Administrative Procedures Act (T.C.A. §§
4-5-301 et seq.) by sending a request for appeal, in writing, to
the Division of Appeals and Hearings within ten (10) days of the
mailing date of the Director's decision[.]" (Id. at 47.)

Muhammad sent letters to TDHS on September 4, 2018, requesting
both an appeal of the exclusion decision set forth in the September

-5-

letter and an administrative waiver. (<u>Id.</u> at 6, 49, 51.) On November 19, 2018, Muhammad and TDHS representatives, including Girgis, appeared for a Contested Case hearing. TDHS took the position that it could not grant a waiver from exclusion because Muhammad's 1993 conviction was a "felony consisting of physical assault or battery."[2] (<u>Id.</u> at 7-8.) As of the date of the filing of the complaint, no decision had been rendered on Muhammad's request for a waiver.[3] (<u>Id.</u> at 8.)

In her complaint, Muhammad asserts that, since September 4, 2018, she has "been unable to be at her home when enrolled children are present, i.e., from 6:00 a.m. until 6:00 p.m.," and has incurred "many expenses and logistical hardships" including having to hire two additional staff members to substitute for her and "to insure that the required adult/child ratios are maintained and that other regulatory requirements are met." (<u>Id.</u> at 20.)  As to defendant Secretary Azar, Muhammad alleges that the federal CCDBG statute, 42 U.S.C. § 9858f,[4] and its implementing regulation, 45

---

[2]Attached as an exhibit to the complaint is a letter from TDHS, dated September 11, 2018, informing Muhammad that a Child Care appeal hearing would be held on October 25, 2018. (ECF No. 1 at 87.) It does not appear from the complaint that a hearing was held on October 25.

[3]Defendants state in their Motion to Dismiss that on December 27, 2018, the hearing officer determined "that the decision to not grant a waiver or exemption was appropriate." (ECF No. 20 at 6.)

[4]42 U.S.C. § 9858f, titled "Criminal background checks," provides in relevant part as follows:

C.F.R. § 98.43, violate her constitutional rights to due process

and equal protection.[5] (<u>Id.</u> at 8-13.)    Specifically, Muhammad

---

(a) In general
A State that receives funds to carry out this subchapter
shall have in effect –
(1) requirements, policies, and procedures to require and
conduct criminal background checks for child care staff
members (including prospective child care staff members)
of child care providers described in subsection (c)(1);
and
(2) licensing, regulation, and registration requirements,
as applicable, that prohibit the employment of child care
staff members as described in subsection (c).
. . . .
(c) Prohibitions
(1) Child care staff members
A child care staff member shall be ineligible for
employment by a child care provider that is receiving
assistance under this subchapter if such individual
. . . .
(D) has been convicted of a felony consisting of –
(i) murder, as described in section 1111 of Title 18;
(ii) child abuse or neglect;
(iii) a crime against children, including child
pornography;
(iv) spousal abuse;
(v) a crime involving rape or sexual assault;
(vi) kidnapping;
(vii) arson;
(viii) physical assault or battery; or
(ix) subject to subsection (e)(4), a drug-related offense
committed during the preceding 5 years;
. . . .
(j) Effective date
. . . .
(3) Penalty for noncompliance
Except as provided in paragraphs (1) and (2), for any
fiscal year that a State fails to comply substantially
with the requirements of this section, the Secretary
shall withhold 5 percent of the funds that would
otherwise be allocated to that State in accordance with
this subchapter for the following fiscal year.

[5]Secretary Azar has filed his own Motion to Dismiss, which the
undersigned will address in a separate report and recommendation.

alleges that she was "deprived of her constitutionally protected property interest in her licenses to operate her child care facilities and was further barred from her home while enrolled children were present, without notice or a hearing." (Id. at 8-9.) Muhammad alleges that these laws are unconstitutional as applied to her because they lack any provisions for pre-deprivation notice or hearing, and lack adequate post-deprivation remedies. (Id. at 9-10.) Muhammad further claims that the challenged federal laws are unconstitutionally vague (specifically with regard to the term "physical assault"), that there is no rational basis for permanently excluding someone convicted of "physical assault or battery" from operating a licensed child care business (especially based on a conviction that is over 25 years old), and that "a regulatory scheme under which being convicted of 'physical assault or battery' permanently bars an individual from working in a child care facility, but only bars someone from adopting or fostering a child for five years [compared to 45 C.F.R. § 1356.30]," amounts to a denial of her right to equal protection. (Id. at 12-13.)

As to defendants Commissioner Barnes and Girgis, Muhammad alleges that she received a waiver from TDHS in 2006 and continued to receive the waiver through September 4, 2018, and she received a "clean" background check as recently as May 29, 2018. (Id. at 15-16.) According to Muhammad, because the July 31, 2018 letter from TDHS stated that "[e]xisting waivers for excludable offenses not

eligible for a waiver under CCDBG will not be extended when the
individual is reprinted (all staff are reprinted every five
years)," she was entitled to have her waiver renewed for another
five years, but was instead deprived of "the use of her license
without due process, and in a manner that was arbitrary, capricious
and lacking any legitimate government purpose." (Id. at 15-16.)
Muhammad contends that at the Contested Case hearing, Girgis
testified that Muhammad's request for a waiver "was not processed
in accordance with any procedures" as required under applicable
Tennessee laws, was "denied out of hand because she was not
entitled to a waiver," and that the right to apply for an
administrative waiver outlined in the September 4 letter "wasn't
real." (Id. at 18.) Muhammad alleges that "[e]ven when confronted
with their obviously illegal treatment of Plaintiff, [TDHS]
officials, acting under color of state law, have knowingly and
deliberately continued to deprive Plaintiff of her protected
property right to her licenses to operate her child care
facilities, without due process and in willful derogation of her
constitutional rights." (Id. at 19.)

Muhammad seeks both preliminary and permanent injunctions
requiring the defendants to "immediately rescind the exclusion of
Plaintiff from her child care businesses, and that those persons be
further enjoined from taking any adverse regulatory action against
Plaintiff concerning the issues of criminal background checks

-9-

and/or exclusion pending a trial[.]" (Id. at 22.)  In addition to injunctive relief, she seeks a declaratory judgment that 42 U.S.C. § 9858f and 45 C.F.R. § 98.43 are unconstitutional and violate her rights to procedural and substantive due process and to equal protection, damages pursuant to 42 U.S.C. § 1983, and attorney's fees pursuant to 42 U.S.C. § 1988. (Id. at 21-23.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Commissioner Barnes and Girgis bring their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 553 (6th Cir. 2012).  Although Rule 12(b)(6) and Rule 12(b)(1) are both "appropriate mechanisms to dismiss claims barred by Eleventh Amendment sovereign immunity[,]" that defense is typically raised in a Rule 12(b)(1) motion. Oshop v. Tenn. Dep't of Children's Servs., No. 3:09-cv-0063, 2009 WL 1651479, at *2 (M.D. Tenn. June 10, 2009).  A challenge to this court's subject-matter jurisdiction based on sovereign immunity can come in two forms. A facial attack accepts the material allegations of the complaint as true but insists nonetheless that the court lacks subject-matter jurisdiction to hear the case. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007).  A factual

-10-

attack claims that the court lacks subject-matter jurisdiction regardless of what the plaintiff has pleaded and requires the trial court to weigh the evidence before it in determining whether that is the case. Id.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views Muhammad's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, Muhammad must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting

-11-

Twombly, 550 U.S. at 555, 557).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." Id.

**B.    § 1983**

Commissioner Barnes and Girgis's first argument in their
Motion to Dismiss is a facial attack on the court's subject-matter
jurisdiction based on sovereign immunity.  They argue that because
Muhammad asserts her § 1983 claim against defendants solely in
their official capacities, those claims for damages are tantamount
to claims against the State of Tennessee.  They contend that such
claims are barred by the Eleventh Amendment to the United States
Constitution, and as a result must be dismissed for lack of
subject-matter jurisdiction. Additionally, defendants argue that
they are not "persons" who can be sued under § 1983.  Muhammad in
her response concedes that she cannot seek money damages against
defendants, but nevertheless argues that sovereign immunity does
not apply to her claims to the extent she seeks injunctive and
declaratory relief.

To state a viable claim under 42 U.S.C. § 1983, a plaintiff
"must satisfy two elements: 1) the deprivation of a right secured
by the Constitution or laws of the United States and 2) the
deprivation was caused by a person acting under color of state
law." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting

-12-

Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995)).  A § 1983 action for damages against a state official in her official capacity qualifies as a lawsuit against the state itself and is generally barred by sovereign immunity. S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).  Defendants correctly argue that they are state officials capable of invoking the defense of sovereign immunity. See White ex rel. Swafford v. Gerbitz, 860 F.2d 661, 664 n.2 (6th Cir. 1988) (explaining that suit against state officials in their official capacity is a suit against Tennessee).  Sovereign immunity will bar claims for damages unless (1) Tennessee has consented to such a suit and thereby waived its immunity or (2) Congress has properly abrogated Tennessee's immunity to those claims. S & M Brands, Inc., 527 F.3d at 507; see also Brent v. Wayne Cty. Dep't of Human Servs., 901 F.3d 656, 681 (6th Cir. 2018); League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 474 (6th Cir. 2008); Barton v. Summers, 293 F.3d 944, 948 (6th Cir. 2002).  The Tennessee General Assembly has not waived the state's immunity to suit under § 1983, see Tenn. Code Ann. § 20-12-102, and the Supreme Court has made clear that § 1983 does not abrogate the state's Eleventh Amendment immunity, see Quern v. Jordan, 440 U.S. 332, 341 (1979).

However, even though Muhammad is barred from pursuing damages against the defendants, her claims are not barred to the extent she

-13-

seeks prospective injunctive and declaratory relief.[6]    "[T]he
Supreme Court announced an exception to Eleventh Amendment
sovereign immunity in [Ex parte Young, 209 U.S. 123 (1908)] for
claims [under federal law] for injunctive relief against individual
state officials in their official capacities." Diaz v. Mich. Dep't
of Corr., 703 F.3d 956, 964 (6th Cir. 2013). As the Sixth Circuit
has explained, "[u]nder the Ex parte Young exception, a federal
court can issue prospective injunctive and declaratory relief
compelling a state official to comply with federal law, regardless
of whether compliance might have an ancillary effect on the state
treasury." S & M Brands, Inc., 527 F.3d at 507 (internal citations
omitted); see also Kanuszewski v. Mich. Dep't of Health & Human
Servs., 927 F.3d 396, 417 (6th Cir. 2019) (quoting S & M Brands).
"It is beyond dispute that federal courts have jurisdiction over
suits to enjoin state officials from interfering with federal
rights." Id. at 507-08; see also Will, 491 U.S. at 71 n.1
(explaining that a state official sued in his or her official
capacity for injunctive relief is a "person" subject to suit under
§ 1983 because "official-capacity actions for prospective relief
are not treated as actions against the State") (quoting Kentucky v.
Graham, 473 U.S. 159, 167 n.14 (1985)).  Here, the Ex parte Young
exception applies to Muhammad's claims for injunctive and

---

[6]"Congress plainly authorized the federal courts to issue
injunctions in § 1983 actions, by expressly authorizing a 'suit in
equity' as one of the means of redress." Mitchum v. Foster, 407

declaratory relief brought against Commissioner Barnes and Girgis
in their official capacities, as the complaint alleges that these
defendants violated Muhammad's constitutional rights to due process
when they enforced the challenged statutes and regulations and
denied her the ability to work at a day care facility without
notice or a meaningful opportunity to be heard.  It is recommended
that defendants' Motion to Dismiss Muhammad's § 1983 claim for
damages for lack of subject-matter jurisdiction be granted, but
that the motion be denied to the extent it seeks dismissal of
Muhammad's claims for injunctive and declaratory relief.

## C.   Failure to State a Claim Based on Defendants' Compliance with 42 U.S.C. § 9858f and 45 C.F.R. § 98.43

Commissioner Barnes and Girgis assert also that their
compliance with the relevant federal statute and accompanying
regulation warrants dismissal of the complaint. Defendants assert
that Muhammad's complaint fails to state a claim upon which relief
may be granted because Muhammad seeks prospective relief in the
form of a declaratory judgment declaring 42 U.S.C. § 9858f and 45
C.F.R. § 98.43 unconstitutional. While defendants acknowledge that
the Eleventh Amendment does not preclude a federal court from
issuing injunctive or declaratory relief against a state official
to prevent violations of federal law, they emphasize that such
relief is available *only* against state officers who violate federal
law. See Lawson v. Shelby County, 211 F.3d 331, 335 (6th Cir.

U.S. 225, 242 (1972).          -15-

2000). Defendants assert that because they complied with § 9858f and § 98.43 during the administrative process, Muhammad has failed to identify any federal law that the defendants violated. Accordingly, defendants conclude that their compliance with the above-mentioned statute renders moot Muhammad's claims against them. As Muhammad points out in her response, however, the declaratory relief sought in this case consists of a declaratory judgment deeming *the application* of § 9858f and § 98.43 to Muhammad unconstitutional for abridging her rights to procedural and substantive due process and to equal protection of the law. Thus, regardless of whether defendants complied with or violated the above-mentioned statute, Muhammad has alleged that defendants violated a federal law, namely the United States Constitution.[7] Accordingly, it is recommended that defendants' Motion to Dismiss on these grounds be denied.

**D.    Failure to State a Claim Based on Eligibility Requirements of 42 U.S.C. § 9858f(c)(1)(D)**

Next, Commissioner Barnes and Girgis argue that because 42 U.S.C. § 9858f(c)(1)(D) prohibits individuals who have been convicted of a felony consisting of "physical assault or battery"

---

[7]The category of "federal law" at issue here includes constitutional challenges; as established in the previous section, "the Ex parte Young exception [to Eleventh Amendment immunity] permits suits challenging the constitutionality of a state official's action." West v. Lee, 2019 U.S. Dist. LEXIS 49450, *7 (M.D. Tenn. Mar. 25, 2019) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984)).

from working as a child care staff member, and because Muhammad was in fact convicted of felony offenses involving physical assault or battery, she is not eligible to work in a child care facility. From this, defendants then argue that the court should dismiss her complaint because it fails to state a claim upon which relief may be granted. Defendants' argument misconstrues Rule 12(b)(6).  At this stage of the litigation, the court must assume that Muhammad's well-pleaded facts are true, Keys v. Humana, 684 F.3d 605, 608 (6th Cir. 2012), and then apply the law to determine if she has stated a plausible claim for which relief can be granted based on those facts, see Iqbal, 556 U.S. at 680-84 and Twombly, 550 U.S. at 564-70. As discussed in greater detail below, the complaint adequately pleads causes of action for violations of Muhammad's right to due process.  Defendants are essentially asking the court to disregard the allegations that support Muhammad's claims of constitutional violations, make a determination that the defendants acted in conformity with the law when they denied her request for a waiver, and then dismiss the case on the merits – which the court cannot do under Rule 12(b)(6).  It is recommended that defendants' Motion to Dismiss on these grounds be denied.

**E.    Substantive Due Process**

Defendants contend that the complaint fails to state a claim for a substantive due process violation.  Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . .

-17-

. deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has both substantive and procedural components. EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012). The substantive component of the Fourteenth Amendment's Due Process Clause establishes that certain state governmental deprivations of "'life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014) (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992)).

Substantive due process protects "a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" Id. (quoting Bell v. Ohio State Univ., 351 F.3d 240, 249-50 (6th Cir. 2003)). "[T]he list of fundamental interests is short and includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment." Langston v. Charter Twp. of Redford, 623 F. App'x. 749, 759 (6th Cir. 2015) (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997)). The complaint fails to allege that the government action at issue affects a fundamental interest.

-18-

"When the conduct in question has been taken by an executive officer, the action violates substantive due process only if it can be characterized as 'arbitrary, or conscience shocking, in a constitutional sense.'" Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (citation and internal quotation marks omitted).   "Moreover, this characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." Id. at 547-48 (internal citations and quotations omitted). "The conscience-shocking limit on substantive due process claims serves to keep the doctrine from expanding to cover administrative incompetence or irresponsibility." Brown v. Detroit Pub. Sch. Cmty. Dist., 763 F. App'x. 497, 504 (6th Cir. 2019) (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).

Even accepting all well-pleaded facts as true, the court finds that the type of government action alleged in this case simply does not rise to the level of conscience-shocking necessary to sufficiently allege a substantive due process claim. At most, the allegations in the complaint rise to the level of "administrative incompetence or irresponsibility" discussed in Brown. The substantive due process jurisprudence of the Supreme Court has consistently excluded the kind of government action at issue here from the category of "conscience-shocking" conduct sufficient to

-19-

maintain a substantive due process claim. See Cty. of Sacramento, 523 U.S. at 847-49. "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted); see also Does v. Munoz, 507 F.3d 961, 966 (6th Cir. 2007) ("We conduct rational-basis review of [government actions] that do not implicate a plaintiff's fundamental rights.").

"Even foolish and misdirected provisions are generally valid if subject only to rational basis review." Craigmiles v. Giles, 312 F.3d 220, 223-24 (6th Cir. 2002). "[A] statute is subject to a 'strong presumption of validity' under rational basis review, and we will uphold it 'if there is any reasonably conceivable state of facts that could provide a rational basis.'" Id. at 224 (quoting Walker v. Bain, 257 F.3d 660, 668 (6th Cir. 2001)). "Those seeking to invalidate a statute using rational basis review must 'negative every conceivable basis that might support it.'" Id. (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)).

The government conduct at issue here involves limiting an individual with a criminal history from working with children. As defendants point out, shielding children from individuals with criminal histories is a legitimate government interest. Moreover,

-20-

limiting the access of workers with criminal histories to children
rationally relates to accomplishing that end. Accordingly, there is
a rational relationship and legitimate governmental interest in the
limitation imposed. Accordingly, it is recommended that the Motion
to Dismiss Muhammad's substantive due process claim be granted.

**F.   Procedural Due Process**

Defendants seek to dismiss Muhammad's procedural due process
claim.  "[T]he Due Process Clause provides that certain substantive
rights - life, liberty, and property - cannot be deprived except
pursuant to constitutionally adequate procedures." Chandler v.
Vill. of Chagrin Falls, 296 F. App'x 463, 468 (6th Cir. 2008)
(quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541
(1985)).  To state a procedural due process claim, Muhammad must
plausibly allege that: (1) she has a property interest protected by
the Due Process Clause; (2) she was deprived of this property
interest; and (3) the state did not afford her adequate pre-
deprivation procedural rights. Id. at 469 (citing Hahn v. Star
Bank, 190 F.3d 708, 716 (6th Cir. 1999)).

"[T]he Supreme Court has held that the hallmark of due process
is that a deprivation of a property interest must be 'preceded by
notice and opportunity for hearing appropriate to the nature of the
case.'" Id. at 470 (quoting Loudermill, 470 U.S. at 542). "'[T]he
root requirement' of the Due Process Clause [is] 'that an
individual be given an opportunity for a hearing *before* he is

deprived of any significant property interest.'" Loudermill, 470
U.S. at 542 (emphasis in original) (quoting Boddie v. Connecticut,
401 U.S. 371, 379). Courts consider three factors when determining
whether an individual received sufficient process:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (citing Goldberg v.
Kelly, 397 U.S. 254, 263–71 (1970)). "Applying this test, the
[Supreme] Court has usually held that the Constitution requires
some kind of a hearing before the State deprives a person of
liberty or property." Chandler, 296 F. App'x at 470 (quoting
Zinermon v. Burch, 494 U.S. 113, 127 (1990)); but see Rosen v.
Goetz, 410 F.3d 919, 926–27 (6th Cir. 2005).

"[P]re-and postdeprivation processes should be considered
together as a single package." Shoemaker v. City of Howell, 795
F.3d 553, 559 (6th Cir. 2015).

> The predeprivation process need not always be elaborate,
> however; the amount of process required depends, in part,
> on the importance of the interests at stake. . . .
> Moreover, the sufficiency of predeprivation procedures
> must be considered in conjunction with the options for
> postdeprivation review; if elaborate procedures for
> postdeprivation review are in place, less elaborate
> predeprivation process may be required. In some cases,
> postdeprivation review may possibly be sufficient, and no
> predeprivation process is required.

-22-

Id. (quoting Leary v. Daeschner, 228 F.3d 729, 742–43 (6th Cir. 2000)) (citations omitted).

     The court finds that Muhammad has sufficiently pleaded a plausible procedural due process claim.    According to the complaint, in 2006, after a hearing before a three-member panel of the TDHS Criminal Exclusion Advisory Committee, Muhammad was granted a waiver because "the Department has determined that you have established extenuating circumstances which would clearly warrant a waiver[.]"  Since 2010, Muhammad has operated child care centers in and next door to her home.    TDHS sent her letters in 2010 and 2011 confirming that she was not excluded from working at these two facilities.    At this 12(b)(6) stage, these allegations satisfy the protected property interest element.    Additionally, she claims that she was deprived of this property interest when TDHS imposed the exclusion and rescinded her waiver, and TDHS did not afford her *any* (much less "adequate") pre-deprivation procedural rights when it sent her the September 4, 2018 letter that made the exclusion effective immediately.    As to the post-deprivation procedures, Muhammad alleges that at the Contested Case hearing, Girgis testified that Muhammad's request for a waiver "was not processed in accordance with any procedures" as required under applicable Tennessee laws, was "denied out of hand because she was not entitled to a waiver," and that the right to apply for an administrative waiver outlined in the September 4 letter "wasn't

-23-

real." These well-pleaded allegations, which the court at this
stage must accept as true, sufficiently allege inadequate post-
deprivation procedures.[8]   Therefore, it is recommended that the
defendants' Motion to Dismiss the procedural due process claim be
denied.

**G.   Equal Protection**

Defendants' final argument is that the complaint fails to
state a claim for a violation of the Equal Protection Clause.  The
Equal Protection Clause of the Fourteenth Amendment provides that
"[n]o State shall . . . deny to any person within its jurisdiction
the equal protection of the laws." U.S. Const., amend. XIV, § 1.
"To state an equal protection claim, a plaintiff must adequately
plead that the government treated the plaintiff 'disparately as
compared to similarly situated persons and that such disparate
treatment either burdens a fundamental right, targets a suspect
class, or has no rational basis.'" Ctr. For Bio-Ethical Reform,

---

[8]Defendants' reliance on the Parratt doctrine is misplaced.  Under
Parratt v. Taylor, 451 U.S. 527 (1981), overruled in other part by
Daniels v. Williams, 474 U.S. 327 (1986), a person deprived of
property by a "random and unauthorized act" of a state employee has
no federal due process claim unless the state fails to afford an
adequate post-deprivation remedy. If an adequate post-deprivation
remedy exists, the deprivation, although real, is not "without due
process of law." Parratt, 451 U.S. at 537. This rule applies to
both negligent and intentional deprivations of property, as long as
the deprivation was not done pursuant to an established state
procedure. See Hudson v. Palmer, 468 U.S. 517, 530-36 (1984).
Because defendants take the position that TDHS's decision to deny
the waiver was made in accordance with established procedures, the
Parratt doctrine does not apply.  Moreover, as discussed above, the
allegations in the complaint challenge the adequacy of those post-

Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (quoting Club
Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.,
470 F.3d 286, 299 (6th Cir. 2006)).

Even assuming that the complaint plausibly alleges that TDHS
treated Muhammad disparately as compared to similarly situated
persons, and even if it did, the complaint nevertheless fails to
allege that such treatment burdens a fundamental right or targets a
suspect class. Because neither a fundamental right nor a suspect
class is at issue, Muhammad's equal protection claim is reviewed
under the rational basis standard. Club Italia Soccer & Sports
Org., 470 F.3d at 298. "Under rational basis review, official
decisions are afforded a strong presumption of validity." In re
Flint Water Cases, 384 F. Supp. 2d 802, 844 (E.D. Mich. 2019)
(citing Walker v. Bain, 257 F.3d 660, 668 (6th Cir. 2001)). "And
even at the motion to dismiss stage, this presents a formidable bar
for plaintiffs to surmount." Id. (citing Theile v. Michigan, 891
F.3d 240, 243 (6th Cir. 2018)). "To plausibly allege that state
action fails under rational basis review, plaintiffs must negate
'every conceivable basis' which might support the challenged
conduct." Id. (quoting Davis v. Prison Health Servs., 679 F.3d 433,
438 (6th Cir. 2012)). "Courts do not consider the wisdom of the
challenged action[,] and defendants do not need to offer any
justification. It is enough that the reviewing court can fairly

deprivation procedures.

-25-

conceive of one existing." Id. (citations omitted).  As the court found in the context of substantive due process, there is a rational relationship and legitimate government interest in limiting access to children by workers who have been convicted of felonies involving physical assault or battery.  It is recommended that the Motion to Dismiss Muhammad's equal protection claim be granted.

## III. RECOMMENDATION

For the reasons above, it is recommended that Commissioner Barnes and Girgis's Motion to Dismiss be granted in part and denied in part.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 19, 2019
Date

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**