IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

LENA MUHAMMAD,                  )
                                )
     Plaintiff,                 )
                                )
v.                              )         No. 18-cv-2857-MSN-tmp
                                )
ALEX M. AZAR II, Secretary of   )
the U.S. Department of Health   )
and Human Services, in his      )
official capacity; DANIELLE W.  )
BARNES, Commissioner of the     )
Tennessee Department of Human   )
Services, in her official       )
capacity; and BASEM GIRGIS,     )
an official with the Tennessee  )
Department of Human Services,   )
in his official capacity,       )
                                )
     Defendants.                )

_____

REPORT AND RECOMMENDATION
_____

     Before the court by order of reference is defendant Alex M.
Azar II's Motion to Dismiss.[1] (ECF Nos. 22 & 23.) For the following
reasons, it is recommended that the Motion to Dismiss be granted.

I.    PROPOSED FINDINGS OF FACT

_____

[1]The undersigned was also referred a Motion to Dismiss filed by the
state defendants in this case. (ECF Nos. 19 & 23.) A separate
report and recommendation recommending that the Motion be granted
in part and denied in part was issued, which was subsequently
adopted by the court. (ECF Nos. 30 & 31.) The instant report and
recommendation's proposed findings of facts are substantially
similar to those in the previous report and recommendation, as is
the legal analysis in sections I-A, I-C, and I-F.

-1-

Plaintiff Lena Muhammad filed the instant complaint on
December 17, 2018. (Complaint, ECF No. 1.) The complaint alleges
several causes of action against defendants Alex M. Azar II, the
Secretary of the United States Department of Health and Human
Services ("HHS"), Danielle W. Barnes, the Commissioner of the
Tennessee Department of Human Services ("TDHS"), and Basem Girgis,
an employee of TDHS, all in their official capacities.[2] The
following findings of fact are based on the well-pleaded
allegations in the complaint and the exhibits attached to the
complaint.

In 1993, when Muhammad (then known as Lena Boyd) was 22 years
old, she pleaded guilty in California state court to "assault with
deadly weapon by force likely to produce great bodily injury"
(California Penal Code § 245) and "discharge of firearm at an
inhabited dwelling house, occupied building, vehicle, aircraft,
inhabited housecar or inhabited camper" (California Penal Code §
246). (ECF No. 1 at 4.) The guilty plea, which is attached to the
complaint as Exhibit 3, indicates that "on [February] 20, 1993 in
Orange County I committed an assault on Andra Boyd with a firearm

---

[2]According to the complaint, Girgis is a paralegal and Licensing
Supervisor Designee with TDHS. (ECF No. 1 at 2.) According to
defendants, Girgis is the Program Coordinator for Child and Adult
Care Licensing. (See Defs.' Mem. of Law in Support of Mot. to
Dismiss, ECF No. 20 at 2 n.1.) For purposes of ruling on this
Motion to Dismiss, the court will accept as true the complaint's
allegations regarding Girgis's job title, although it is worth
noting that this discrepancy is immaterial to the issues raised in
the Motion.

-2-

and while he was in a motor vehicle." (Id. at 33.) The criminal
charges stemmed from an incident that involved her "shooting at,
but missing, her abusive then-husband." (Id. at 4.) Muhammad was
convicted of these felony offenses and served a mandatory two-year
prison sentence. Since her release from prison, she has not had any
other criminal convictions. (Id.)

In 2006, Muhammad applied with the State of Tennessee for a
waiver that would allow her to work at a child care facility. (Id.)
Specifically, she filed an application with TDHS pursuant to Tenn.
Code Ann. 71-3-507(f), which establishes a procedure for obtaining
a waiver for persons who would otherwise be excluded under state
and federal law from working at or operating a child care facility
based on their criminal background. (Id. at 5.) Following a hearing
before a three-member panel of the TDHS Criminal Exclusion Advisory
Committee, Muhammad received a letter dated December 4, 2006,
granting her the waiver and stating that "the Department has
determined that you have established extenuating circumstances
which would clearly warrant a waiver[.]" (Id. at 5, 35.) In 2007,
Muhammad opened Lena's Little Ones, a child care facility which she
operated out of her home. (Id. at 3.) In 2010, Muhammad opened a
second child care facility next door to her home, Lena's Little
Ones II. (Id. at 4.) TDHS sent her letters in March 2010 and
October 2011, confirming that she was not excluded from working at
these two facilities. (Id. at 5, 37, 39.) Since opening these

facilities, Muhammad has been in full compliance with TDHS's requirements and has received the highest "Three Star" designation every year. (Id. at 4.)

On July 31, 2018, TDHS sent Muhammad a letter stating that it would be making changes to the waiver review process in order to implement the federal Child Care and Development Block Grant ("CCDBG") comprehensive background check requirements. (Id. at 5, 42.) The letter stated:

> CCDBG provisions include requirements for excluding individuals convicted of particular crimes from working in child care facilities, but the provisions for granting waivers for excludable CCDBG offenses are now limited to felony drug offenses that occurred more than five years ago and misdemeanors and felonies not included in the list below.
>
> Below is a listing of the excludable offenses under CCDBG that do NOT include a provision for requesting a waiver:
>
> . . .
>
> - A felony consisting of: . . . Physical assault or battery;
>
> . . .
>
> Existing waivers for excludable offenses not eligible for a waiver under CCDBG will not be extended when the individual is reprinted (all staff are reprinted every five years).

(Id. at 42.) According to the complaint, the July 31, 2018 letter did not "put [Muhammad] on notice that the waiver she had had since 2006 might be revoked. The crimes listed in the letter did not appear to apply in any way to her 1993 conviction." (Id. at 6.)

On September 4, 2018, TDHS sent a letter to Muhammad stating

−4−

that, effective immediately, she would be excluded from "operating, working in, volunteering at, providing substitute services to, residing in, or having any access whatsoever to children/adults in a child care agency/adult day care agency at any time that children/adults enrolled in the agency are present," due to her criminal conviction. (ECF No. 1 at 6, 45.) The letter informed Muhammad that she could (1) appeal the exclusion and receive an administrative hearing, but only on grounds that "you are not the person identified in the records used to determine that you should be excluded" or "the basis for the exclusion has been dismissed, resulted in an acquittal, or expunged"; and/or (2) "ask to receive an administrative *waiver* that will exempt you from exclusion." (Id. at 46-47) (emphasis in original). Regarding the administrative waiver, the letter advised that "[a]s part of the waiver request, you may present information and documentation that demonstrates that there are extenuating circumstances that provide a good reason to waive the exclusion." (Id. at 47.) The letter stated that an "advisory committee will consider whether those circumstances clearly warrant a waiver of the exclusion and will make a recommendation to the Director of Child and Adult Care Licensing," and that she could "appeal a decision by the Director of Child and Adult Care Licensing to reject a waiver request and receive a hearing under the Uniform Administrative Procedures Act (T.C.A. §§ 4-5-301 et seq.) by sending a request for appeal, in writing, to

-5-

the Division of Appeals and Hearings within ten (10) days of the
mailing date of the Director's decision[.]" (Id. at 47.)

Muhammad sent letters to TDHS on September 4, 2018, requesting
both an appeal of the exclusion decision set forth in the September
4 letter and an administrative waiver. (Id. at 6, 49, 51.) On
November 19, 2018, Muhammad and TDHS representatives, including
Girgis, appeared for a Contested Case hearing. TDHS took the
position that it could not grant a waiver from exclusion because
Muhammad's 1993 conviction was a "felony consisting of physical
assault or battery."[3] (Id. at 7-8.) As of the date of the filing of
the complaint, no decision had been rendered on Muhammad's request
for a waiver. (Id. at 8.)

In her complaint, Muhammad asserts that, since September 4,
2018, she has "been unable to be at her home when enrolled children
are present, i.e., from 6:00 a.m. until 6:00 p.m.," and has
incurred "many expenses and logistical hardships" including having
to hire two additional staff members to substitute for her and "to
insure that the required adult/child ratios are maintained and that
other regulatory requirements are met." (Id. at 20.) As to
defendant Secretary Azar, Muhammad alleges that the federal CCDBG

---

[3]Attached as an exhibit to the complaint is a letter from TDHS,
dated September 11, 2018, informing Muhammad that a Child Care
appeal hearing would be held on October 25, 2018. (ECF No. 1 at
87.) It does not appear from the complaint that a hearing was held
on October 25.

statute, 42 U.S.C. § 9858f,[4] and its implementing regulation, 45

C.F.R. § 98.43, violate her constitutional rights to due process

_____

[4] 42 U.S.C. § 9858f, titled "Criminal background checks," provides in relevant part as follows:

> (a) In general
> A State that receives funds to carry out this subchapter shall have in effect –
> (1) requirements, policies, and procedures to require and conduct criminal background checks for child care staff members (including prospective child care staff members) of child care providers described in subsection (c)(1); and
> (2) licensing, regulation, and registration requirements, as applicable, that prohibit the employment of child care staff members as described in subsection (c).
> . . . .
> (c) Prohibitions
> (1) Child care staff members
> A child care staff member shall be ineligible for employment by a child care provider that is receiving assistance under this subchapter if such individual
> . . . .
> (D) has been convicted of a felony consisting of –
> (i) murder, as described in section 1111 of Title 18;
> (ii) child abuse or neglect;
> (iii) a crime against children, including child pornography;
> (iv) spousal abuse;
> (v) a crime involving rape or sexual assault;
> (vi) kidnapping;
> (vii) arson;
> (viii) physical assault or battery; or
> (ix) subject to subsection (e)(4), a drug-related offense committed during the preceding 5 years;
> . . . .
> (j) Effective date
> . . . .
> (3) Penalty for noncompliance
> Except as provided in paragraphs (1) and (2), for any fiscal year that a State fails to comply substantially with the requirements of this section, the Secretary shall withhold 5 percent of the funds that would otherwise be allocated to that State in accordance with this subchapter for the following fiscal year.

and equal protection. (Id. at 8-13.) Specifically, Muhammad alleges
that she was "deprived of her constitutionally protected property
interest in her licenses to operate her child care facilities and
was further barred from her home while enrolled children were
present, without notice or a hearing." (Id. at 8-9.) Muhammad
alleges that these laws are unconstitutional as applied to her
because they lack any provisions for pre-deprivation notice or
hearing, and lack adequate post-deprivation remedies. (Id. at 9-
10.) Muhammad further claims that the challenged federal laws are
unconstitutionally vague (specifically with regard to the term
"physical assault"), that there is no rational basis for
permanently excluding someone convicted of "physical assault or
battery" from operating a licensed child care business (especially
based on a conviction that is over 25 years old), and that "a
regulatory scheme under which being convicted of 'physical assault
or battery' permanently bars an individual from working in a child
care facility, but only bars someone from adopting or fostering a
child for five years [compared to 45 C.F.R. § 1356.30]," amounts to
a denial of her right to equal protection. (Id. at 12-13.)

    As to defendants Commissioner Barnes and Girgis, Muhammad
alleges that she received a waiver from TDHS in 2006 and continued
to receive the waiver through September 4, 2018, and she received a
"clean" background check as recently as May 29, 2018. (Id. at 15-
16.) According to Muhammad, because the July 31, 2018 letter from

-8-

Case 2:18-cv-02857-MSN-tmp    Document 32    Filed 09/26/19    Page 9 of 24
PageID 561

TDHS stated that "[e]xisting waivers for excludable offenses not eligible for a waiver under CCDBG will not be extended when the individual is reprinted (all staff are reprinted every five years)," she was entitled to have her waiver renewed for another five years, but was instead deprived of "the use of her license without due process, and in a manner that was arbitrary, capricious and lacking any legitimate government purpose." (Id. at 15-16.) Muhammad contends that at the Contested Case hearing, Girgis testified that Muhammad's request for a waiver "was not processed in accordance with any procedures" as required under applicable Tennessee laws, was "denied out of hand because she was not entitled to a waiver," and that the right to apply for an administrative waiver outlined in the September 4 letter "wasn't real." (Id. at 18.) Muhammad alleges that "[e]ven when confronted with their obviously illegal treatment of Plaintiff, [TDHS] officials, acting under color of state law, have knowingly and deliberately continued to deprive Plaintiff of her protected property right to her licenses to operate her child care facilities, without due process and in willful derogation of her constitutional rights." (Id. at 19.)

Muhammad seeks both preliminary and permanent injunctions requiring the defendants to "immediately rescind the exclusion of Plaintiff from her child care businesses, and that those persons be further enjoined from taking any adverse regulatory action against

-9-

Plaintiff concerning the issues of criminal background checks
and/or exclusion pending a trial[.]" (Id. at 22.) In addition to
injunctive relief, she seeks a declaratory judgment that 42 U.S.C.
§ 9858f and 45 C.F.R. § 98.43 are unconstitutional and violate her
rights to procedural and substantive due process and to equal
protection, damages against the TDHS defendants pursuant to 42
U.S.C. § 1983, and attorney's fees from the TDHS defendants
pursuant to 42 U.S.C. § 1988. (Id. at 21-23.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

Secretary Azar brings his Motion to Dismiss under Federal
Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal courts are
courts of limited subject-matter jurisdiction and can adjudicate
only those claims authorized by the Constitution or an act of
Congress. Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548,
553 (6th Cir. 2012). A challenge to this court's subject-matter
jurisdiction can come in two forms. A facial attack accepts the
material allegations of the complaint as true but insists
nonetheless that the court lacks subject-matter jurisdiction to
hear the case. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,
491 F.3d 320, 330 (6th Cir. 2007). A factual attack claims that the
court lacks subject-matter jurisdiction regardless of what the
plaintiff has pleaded and requires the trial court to weigh the
evidence before it in determining whether that is the case. Id.

-10-

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views Muhammad's allegations in the light most favorable to her and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, a plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

-11-

B.    Standing

The Secretary's first argument is that Muhammad lacks standing. (ECF No. 22.) The Secretary claims that the federal disqualification requirements apply only to child care facilities that serve children receiving federal block grant funds. (Id.) The Secretary asserts that Muhammad does not allege she serves or served children receiving federal block grant funds, and that as a result, her injuries cannot be traced back to HHS. (Id.) The Secretary argues this means Muhammad does not have standing. (Id.) In her response, Muhammad acknowledges that her complaint does not "explicitly" allege that she cares for children receiving federal block grants, but argues this is implied by the state's subsequent course of conduct. (ECF No. 29.)

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)). To satisfy the second requirement, "the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations, citations, and alterations omitted). A plaintiff seeking federal jurisdiction "must 'clearly and

-12-

specifically set forth facts sufficient to satisfy [the three] Article III standing requirements.'" <u>Rosen v. Tennessee Com'r of Fin. & Admin.</u>, 288 F.3d 918, 927 (6th Cir. 2002) (quoting Moore's Federal Practice § 101.31 (3d ed. 2001)). When a party fails to allege facts sufficient to establish standing, the complaint must be dismissed for lack of subject-matter jurisdiction. <u>Id.</u>

Muhammad claims that her injury is fairly traceable to the Secretary because the federal disqualification requirements bar her from having access to her daycare and Secretary Azar is the head of the federal agency in charge of implementing the disqualification requirements. The federal disqualification requirements apply only to child care providers that care for children receiving federal block grant funds. 42 U.S.C. § 9858f(c)(1)(D)(vii) ("A child care staff member shall be ineligible for employment by a child care provider that is receiving assistance under this subchapter if such individual . . . has been convicted of a felony consisting of physical assault or battery . . . ."); Child Care and Development Fund (CCDF) Program, 81 Fed. Reg. 67438, 67499 (preamble to HHS final rule implementing the disqualification requirements) ("[The federal] employment disqualifications specifically do not apply to child care staff members of licensed providers who do not serve children receiving CCDF subsidies."). If Muhammad was deprived of access to her daycare by TDHS, but was not covered by the federal disqualification requirements, then her injury is traceable only to

-13-

the TDHS defendants and not to the Secretary. See Lujan, 504 U.S.
at 560. As such, to sue the Secretary, Muhammad needs to allege
that her daycare serves children who receive federal block grant
funds.[5] She has not done so, and the court cannot assume that this
is true by implication. It is recommended that Muhammad's claims
against the Secretary be dismissed for lack of standing.

Ordinarily, if a federal court is presented with both a
jurisdictional question and a merits question, and it finds it
lacks jurisdiction, it does not proceed to the merits question.
Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422,
430-31 (2007) ("[A] federal court generally may not rule on the
merits of a case without first determining that it has jurisdiction
over the category of claim in suit (subject-matter
jurisdiction)[.]"). However, because the defendant has made, and
the undersigned has been referred, a motion based on both Rules
12(b)(1) and 12(b)(6), the undersigned addresses the Rule 12(b)(6)
grounds for the sake of completeness.

## C.    Substantive Due Process

The Secretary contends that the complaint fails to state a

---

[5]Muhammad has not alleged that the Secretary failed to enforce
federal rules about due process in the disqualification process
against the state.  Some courts have held that such claims may
appropriately be brought against federal defendants administering
similarly structured programs because the federal official's
failure to act is both fairly traceable to the deprivation of due
process and redressable through an injunction or declaratory
judgment.  See Banks v. Sec'y of Indiana Family & Soc. Servs.
Admin., 997 F.2d 231, 240 (7th Cir. 1993).

claim for a substantive due process violation. Under the Fifth Amendment to the United States Constitution, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The clause has both substantive and procedural components. EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012). The substantive component of the Fifth Amendment's Due Process Clause establishes that certain state governmental deprivations of "'life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014) (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992)).

Substantive due process protects "a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" Id. (quoting Bell v. Ohio State Univ., 351 F.3d 240, 249-50 (6th Cir. 2003)). "[T]he list of fundamental interests is short and includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment." Langston v. Charter Twp. of Redford, 623 F. App'x 749, 759 (6th Cir. 2015) (citing Washington v. Glucksberg,

-15-

521 U.S. 702, 720 (1997)). The complaint fails to allege that the government action at issue affects a fundamental interest.

"When the conduct in question has been taken by an executive officer, the action violates substantive due process only if it can be characterized as 'arbitrary, or conscience shocking, in a constitutional sense.'" Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)) (citation and internal quotation marks omitted). "Moreover, this characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." Id. at 547-48 (internal citations and quotations omitted). "The conscience-shocking limit on substantive due process claims serves to keep the doctrine from expanding to cover administrative incompetence or irresponsibility." Brown v. Detroit Pub. Sch. Cmty. Dist., 763 F. App'x 497, 504 (6th Cir. 2019) (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).

Even accepting all well-pleaded facts as true, the court finds that the type of government action attributed to the Secretary here simply does not rise to the level of conscience-shocking necessary to sufficiently allege a substantive due process claim. "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is

rationally related to a legitimate state interest." <u>Valot v. Se.
Local Sch. Dist. Bd. of Educ.</u>, 107 F.3d 1220, 1228 (6th Cir. 1997)
(citations omitted); <u>see also</u> <u>Does v. Munoz</u>, 507 F.3d 961, 966 (6th
Cir. 2007) ("We conduct rational-basis review of [government
actions] that do not implicate a plaintiff's fundamental rights.").

"Even foolish and misdirected provisions are generally valid
if subject only to rational basis review." <u>Craigmiles v. Giles</u>, 312
F.3d 220, 223-24 (6th Cir. 2002). "[A] statute is subject to a
'strong presumption of validity' under rational basis review, and
we will uphold it 'if there is any reasonably conceivable state of
facts that could provide a rational basis.'" <u>Id.</u> at 224 (quoting
<u>Walker v. Bain</u>, 257 F.3d 660, 668 (6th Cir. 2001)). "Those seeking
to invalidate a statute using rational basis review must 'negative
every conceivable basis that might support it.'" <u>Id.</u> (quoting
<u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 U.S. 356, 364 (1973)).

The federal statute the Secretary administered and its
implementing regulations as applied here limit an individual with a
conviction for a violent felony from working with children at a
child care facility. Shielding children from individuals with a
conviction for a violent felony is a legitimate government
interest. Moreover, limiting the access of those workers to
children rationally relates to accomplishing that end.
Accordingly, there is a rational relationship and legitimate
governmental interest in the limitation imposed. It is recommended

-17-

that the Motion to Dismiss Muhammad's substantive due process claim
be granted.

**D.    Void for Vagueness**

The Secretary next moves to dismiss Muhammad's void-for-
vagueness claims. The Due Process Clause requires that laws
governing private conduct not be overly vague. Belle Maer Harbor v.
Charter Twp. of Harrison, 170 F.3d 553, 556 (6th Cir. 1999). "The
vagueness doctrine has two primary goals: (1) to ensure fair notice
to the citizenry and (2) to provide standards for enforcement by
police, judges, and juries." Ass'n of Cleveland Fire Fighters v.
City of Cleveland, Ohio, 502 F.3d 545, 551 (6th Cir. 2007).
Accordingly, there are two prongs to the void-for-vagueness test:
fair notice and nondelegation. Id. Fair notice requires that a
statute's "'prohibitive terms [be] clearly defined such that a
person of ordinary intelligence can readily identify the applicable
standard for inclusion and exclusion.'" Miller v. City of
Cincinnati, 622 F.3d 524, 539 (6th Cir. 2010) (quoting United Food
& Commercial Workers Union Local 1099 v. Southwest Ohio Regional
Transit Auth., 163 F.3d 341, 358-59 (6th Cir. 1998)). Nondelegation
requires that the law have "explicit standards" for enforcement
such that "basic policy matters" are not left for "resolution on an
ad hoc and subjective basis." Cleveland Fire Fighters, 502 F.3d at
551 (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09
(1972)) (internal quotation marks omitted).

How stringently a court should apply the vagueness doctrine depends on the type of law and kind of case at issue. Id. Civil laws are subject to less scrutiny than criminal laws, and laws governing ordinary conduct are subject to less scrutiny than those governing fundamental rights. Id. Except for certain First Amendment challenges, a litigant challenging a statute on vagueness grounds as applied can only prevail if the statute is vague with respect to the litigant's specific conduct. Columbia Nat. Res., Inc. v. Tatum, 58 F.3d 1101, 1109 n.6 (6th Cir. 1995).

The Secretary does not contest the applicability of the void-for-vagueness doctrine to the provisions of federal law at issue here.[6] However, Muhammad has not met her burden to show vagueness.

_____

[6]It is not obvious to the undersigned that the void-for-vagueness doctrine applies here. The vagueness doctrine applies to laws governing private conduct — laws which say what a citizen can or cannot do. FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that *laws which regulate persons or entities* must give fair notice of conduct that is forbidden or required.") (emphasis added). But the federal law at issue here does not tell private citizens to do anything. Instead, it instructs the Secretary to promulgate regulations that instruct certain states to create rules that govern private conduct; plus, the conduct being regulated here – working at a daycare that receives federal funds – is only arguably private. This distinction matters because "Congress simply cannot do its job absent an ability to delegate power under broad general directives." Mistretta v. United States, 488 U.S. 361, 372 (1989). Congress's power to delegate rulemaking power is limited by the non-delegation doctrine, which is considerably more deferential than the void-for-vagueness doctrine. See generally Gundy v. United States, 139 S. Ct. 2116 (2019). But if every law that delegates power to create regulations that govern private conduct were directly subject to void-for-vagueness challenges, the distinction between the two doctrines would be erased. However, because the Secretary does not argue against the application of the void-for-

-19-

On the fair notice issue, the question is whether a reasonable
person would understand that the federal disqualification
requirement's reference to "a felony consisting of . . . physical
assault or battery" would apply to a conviction for "assault with a
deadly weapon by force likely to produce great bodily injury." 42
U.S.C. § 9858f; (ECF No. 1, 4.)    Muhammad's primary argument for
lack of notice is that the California statute she was convicted
under has been interpreted to cover acts that do not include actual
physical contact.    This argument is unavailing.    Assault
traditionally refers to the threatened or attempted use of physical
force, not to its successful use, which is termed battery. Wayne R.
LaFave, 2 Subst. Crim. L. § 16.1(a) (3d ed.) ("Battery requires
such an injury or touching. Assault, on the other hand, needs no
such physical contact; it might almost be said that it
affirmatively requires an absence of contact."). A statute is not
void for vagueness when its terms are used in accordance with their
generally accepted meaning. See Vill. of Hoffman Estates v.
Flipside, Hoffman Estates, Inc., 455 U.S. 489, 501 (1982).
Muhammad also cannot prevail on the nondelegation issue.
Muhammad's complaint is that the statute limits the discretion of
enforcement officials, not that it enlarges it. This is the exact
opposite of the problem the nondelegation component of the void-
for-vagueness doctrine is designed to address. See Cleveland Fire

vagueness doctrine in the present case, the undersigned does not

Fighters, 502 F.3d at 551. Accordingly, it is recommended that Muhammad's void-for-vagueness claims be dismissed.

**E.   Procedural Due Process**

The Secretary seeks to dismiss Muhammad's procedural due process claims. "[T]he Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." Chandler v. Vill. of Chagrin Falls, 296 F. App'x 463, 468 (6th Cir. 2008) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). To state a procedural due process claim, Muhammad must plausibly allege that: (1) she has a property interest protected by the Due Process Clause; (2) she was deprived of this property interest; and (3) the state did not afford her adequate pre-deprivation procedural rights. Id. at 469 (citing Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)).

The problem with Muhammad's procedural due process claims against the Secretary is that it was the state defendants, not the Secretary, who prohibited Muhammad from having access to her daycare. To state a claim against the Secretary for procedural due process violations, Muhammad would have to allege some action or inaction by the Secretary or the agency he heads that led to the deprivation of a protected property interest. Against the Secretary, Muhammad alleges only that the federal statute and its

reach this issue.

implementing regulations "have no provision for any predeprivation
notice or hearing of any kind." (ECF No. 1.) This is true, in the
sense that though the statute and its implementing regulations
require disqualified persons to have a notice and an opportunity to
appeal, they do not require those processes to take place before a
disqualified person is denied access to a covered childcare
facility. See 42 U.S.C. § 9858f(e)(3). But the statute and its
implementing regulations also do not require denial of access
before a hearing. Id. As explained in the preamble to the final
rule implementing the federal disqualification provisions,
"[s]tates have the option of allowing child care providers to
employ staff members or prospective staff members while they are
involved in the appeals process." 81 Fed. Reg. 67438, 67503. Using
this discretion, TDHS elected not to allow Muhammad to access her
daycare during the pendency of her appeal of disqualification. If
this violated the Constitution, Muhammad's remedy lies against TDHS
officals, not the Secretary. It is recommended that Muhammad's
procedural due process claims be dismissed.

**F.   Equal Protection**

The Secretary's final argument is that the complaint fails to
state a claim for a violation of the Equal Protection Clause. The
Fifth Amendment provides co-extensive protections to the Fourteenth
Amendment's Equal Protection Clause. Weinberger v. Wiesenfeld, 420
U.S. 636, 638 fn. 2 (1975). "To state an equal protection claim, a

-22-

plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" Ctr. For Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (quoting Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich., 470 F.3d 286, 299 (6th Cir. 2006)).

Even assuming that the complaint plausibly alleges that the federal government treated Muhammad disparately as compared to similarly situated persons, the complaint nevertheless fails to allege that such treatment burdens a fundamental right or targets a suspect class. Because neither a fundamental right nor a suspect class is at issue, Muhammad's equal protection claim is reviewed under the rational basis standard. Club Italia Soccer & Sports Org., 470 F.3d at 298. "Under rational basis review, official decisions are afforded a strong presumption of validity." In re Flint Water Cases, 384 F. Supp. 2d 802, 844 (E.D. Mich. 2019) (citing Walker v. Bain, 257 F.3d 660, 668 (6th Cir. 2001)). "And even at the motion to dismiss stage, this presents a formidable bar for plaintiffs to surmount." Id. (citing Theile v. Michigan, 891 F.3d 240, 243 (6th Cir. 2018)). "To plausibly allege that state action fails under rational basis review, plaintiffs must negate 'every conceivable basis' which might support the challenged conduct." Id. (quoting Davis v. Prison Health Servs., 679 F.3d 433,

-23-

438 (6th Cir. 2012)). "Courts do not consider the wisdom of the challenged action[,] and defendants do not need to offer any justification. It is enough that the reviewing court can fairly conceive of one existing." Id. (citations omitted). As the court found in the context of substantive due process, there is a rational relationship and legitimate government interest in limiting access to children by workers who have been convicted of a violent felony. It is recommended that the Motion to Dismiss Muhammad's equal protection claim be granted.

### III. RECOMMENDATION

For the reasons above, it is recommended that the Secretary's Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 26, 2019
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**