## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| LENA MUHAMMAD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 2:18-cv-02857-MSN-tmp |
| | ) |
| CLARENCE H. CARTER in his official | ) |
| capacity, and BASEM GIRGIS in his official | ) |
| capacity, | ) |
| | ) |
|     Defendants. | ) |

### ORDER GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Before the Court is the Motion for Summary Judgment ("Motion") (ECF No. 63) filed by Defendants Clarence H. Carter and Basem Girgis ("Defendants") on July 6, 2022. Along with their Motion, Defendants submitted a Statement of Material Facts (ECF No. 63-1) ("Defendants' SMF"), a Memorandum in Support of Summary Judgment (ECF No. 63-2), and several declarations and exhibits (ECF Nos. 63-3 through 63-12). By leave of the Court, Plaintiff filed a response to Defendants' Motion on September 13, 2022 (ECF No. 69), a Memorandum in Support of Her Reply to Defendants' Motion for Summary Judgment (ECF No. 69-1), Additional Undisputed Material Facts (ECF No. 69-2), a Response to Defendants' Statement of Material Facts (ECF No. 69-3), and several declarations and exhibits (ECF Nos. 69-4 through 69-9). For the reasons below, Defendants' Motion is **GRANTED**.

**BACKGROUND**

A.  **Procedural Background**

On December 17, 2018, Plaintiff filed her initial Complaint against Defendants Clarence H. Carter, the Commissioner of the Tennessee Department of Human Services ("TDHS"), and Basem Girgis, a TDHS employee, in their official capacities.[1]  (ECF No. 1.)  Specifically, Plaintiff alleged pursuant to 42 U.S.C. § 1983 that Defendants violated her rights to procedural and substantive due process under the Fifth and Fourteenth Amendments to the U.S. Constitution, and her right to equal protection under the Fourteenth Amendment.  (ECF No. 1 at Page ID 15-20.)  On September 5, 2019, the Court dismissed Plaintiff's substantive due process and equal protection claims.  (ECF No. 31.)  As a result, all that remains is Plaintiff's procedural due process claim.  In addition, Plaintiff seeks declaratory judgment that 42 U.S.C. § 9858f and 45 C.F.R. § 98.43 are unconstitutional as applied to her, and attorney's fees pursuant to 42 U.S.C. § 1988.

B.  **Factual Background**[2]

In 1993, Plaintiff pled guilty to two felonies in California.  (ECF No. 63-1 at PageID 716.)  One of those felonies was assault with a deadly weapon or by force likely to produce great

---

[1] Plaintiff's original Complaint named Danielle W. Barnes, (former) Commissioner of the Tennessee Department of Human Services ("TDHS"), as a Defendant in this case in her official capacity.  On September 20, 2021, Mr. Carter was substituted for Ms. Barnes as a party due to Ms. Barnes's departure from TDHS.  Plaintiff also named Alex M. Azar, II, (former) Secretary of the United States Department of Health and Human Services, as a Defendant in this case, also in his official capacity.  The Court dismissed Sec. Azar and Plaintiff's claims against him from this matter on September 18, 2020.  (*See* ECF Nos. 41, 42.)

[2] Plaintiff did not dispute any of Defendants' Undisputed Material Facts for purposes of Summary Judgment.  (*See* ECF No. 68.)  Defendants did dispute some of Plaintiff's proffered Undisputed Material Facts (*see* ECF No. 74-1), but those are not included in the Court's factual background.

bodily injury, and the other was "[d]ischarge of [a] firearm at [an] inhabited dwelling house, occupied building, vehicle, aircraft, inhabited housecar or inhabited camper." (ECF No. 1 at PageID 30.)

Some time after that, Plaintiff decided to pursue work in child care. While her California convictions ordinarily would have made her ineligible to work at a child care agency in Tennessee, state law provided a process through which individuals could apply for exemptions to exclusions based on criminal background, and Plaintiff successfully obtained such a waiver ("criminal exclusion waiver") from TDHS in 2006. (ECF No. 63-1 at PageID 716.)

In 2007, Plaintiff opened a child care facility called "Lena's Little Ones" in Memphis, Tennessee. Three years later, Plaintiff opened a second child care facility in Memphis, aptly named "Lena's Little Ones II." (*Id.* at PageID 715.) These facilities serve children who receive federal funding under the Child Care and Development Block Grant (CCDBG) Act, 42 U.S.C. § 9858f, so are required to comply with the CCDBG Act in order to continue receiving funding through that Act. (*Id.* at PageID 715–16.) In Tennessee, TDHS is responsible for administering CCDBG funding. (*Id.* at PageID 715.)

From the time that Plaintiff obtained her criminal exclusion waiver in 2006, the CCDBG Act and its implementing regulations have barred CCDBG funding from child care providers that employ individuals with certain criminal backgrounds. (*Id.* at PageID 716.) Prior to 2014, the CCDBG Act gave states discretion to exempt individuals from this general prohibition, as evidenced by TDHS's issuance of Plaintiff's criminal exclusion waiver in 2006, and its renewals of that waiver in 2010 and 2011. (*Id.* at PageID 716.) This regime changed in 2014, however, when Congress amended the CCDBG Act to terminate states' authority to so exempt individuals if convicted of certain offenses. (*Id.* at PageID 717.) Relevant to this matter, a felony consisting

3

of "physical assault or battery" was included in the list of offenses in the amended CCDBG Act for which conviction bars employment at a child care facility that receives funding under that Act. (*Id.*) The implementing regulation contains the same prohibition. (*Id.*) States were expected to be in compliance with these new requirements by the end of fiscal year 2018. (*Id.*)

Spurred by these amendments, TDHS informed Plaintiff in a July 31, 2018 letter that the process for obtaining criminal exclusion waivers was changing in order to comply with the changes in the CCDBG Act. (*Id.*) Further, the letter explained that offenses TDHS had previously waived, including felonies consisting of "physical assault or battery," could no longer be waived. (*Id.*) On September 4, 2018, TDHS followed up with another letter to Plaintiff informing her that, effective immediately, she could not work in a child care agency due to her prior convictions which had re-appeared in a background check performed in May 2018. (*Id.* at PageID 717–18.) This September letter also notified Plaintiff of the two options available to her moving forward: she could either appeal the exclusion and receive an administrative hearing to challenge the accuracy and completeness of her criminal record (though not the merits of her convictions), or she could seek an administrative waiver. (*Id.* at PageID 718.) Plaintiff pursued both of these avenues immediately after receiving the letter. (*Id.*)

On November 19, 2018, Plaintiff received a trial type hearing with TDHS's Division of Appeals and Hearings, at which parties introduced evidence that included witness testimony. (*Id.*; ECF No. 63-4.) Plaintiff did not challenge the accuracy or completeness of the criminal records giving rise to her exclusion at the hearing but challenged, instead, the determination by TDHS that her California convictions constituted offenses that the CCDBG Act's implementing regulation deemed non-waivable. (*Id.*) On December 27, 2018, the hearing officer entered an Initial Order ("Order") upholding Plaintiff's exclusion from employment at a child care agency.

4

(*Id.* at PageID 719.)  The Order also determined that Plaintiff's conviction for assault with a deadly weapon did constitute an offense consisting of physical assault or battery under the applicable regulation, and that Plaintiff was therefore ineligible for a criminal exclusion waiver. (*Id.*)  While the Order also informed Plaintiff of her options for seeking review of the order, Plaintiff did not pursue those avenues.  (*Id.*)  Consequently, the Order became a Final Order of which the Plaintiff also declined to seek review.  (*Id.*)

## STANDARD OF REVIEW

A. **Summary Judgment**

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment—and the Court to grant summary judgment—"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations, stipulations . . . , or other materials; or [by] "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary

judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

**B.**     **Standing**

The Court has an independent duty to examine its jurisdiction. *See Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 413 (6th Cir. 2021) (citing *Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021)); *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (standing is "jurisdictional and must be addressed as a threshold matter"); *United States v. Ellis*, 125 F. App'x 691, 695 (6th Cir. 2005) (holding that it is "incumbent" upon the Court to determine whether a party has "standing to challenge the constitutionality of the officers' actions[,]" even when the issue of standing is not raised by the parties).

"To have standing, a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "If a party does not have standing to bring an action, then the court has no authority to hear the matter and must dismiss the case." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citation omitted). "The party seeking to invoke federal jurisdiction bears the burden to

7

demonstrate standing and he 'must plead its components with specificity.'" *Daubenmire v. City of Columbus*, 507 F.3d 383, 388 (6th Cir. 2007) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (further citation omitted)). A plaintiff's allegations in support of standing are analyzed for plausibility under the same standard as a motion under Federal Rule of Civil Procedure 12(b)(6). *See Glennborough*, 21 F.4th at 414 (explaining the standard for alleging facts supporting standing aligns with that governing motions to dismiss under Fed. R. Civ. P. 12(b)(6)); *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 545 (6th Cir. 2021) (noting plaintiffs' "theory fails to *plausibly* plead standing's injury and causation element") (emphasis added). A standing analysis "is not a merits inquiry." *Gerber*, 14 F.4th at 505; *see Kanuszewski*, 927 F.3d at 407 ("standing analysis does not consider the merits of Plaintiffs' claims"). A plaintiff must have standing throughout every stage of the litigation for each claim and form of relief sought. *Uzuegbunam v. Praczewski*, 141 S. Ct. 792, 801 (2021); *Glennborough*, 21 F.4th at 414 ("A plaintiff must demonstrate standing for each claim she seeks to press and for each form of relief she seeks").

C.  **§ 1983 Procedural Due Process Claim**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. To establish a claim for procedural due process under § 1983, a plaintiff "must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

## DISCUSSION

A.  **Procedural Due Process Claim**

Defendants are entitled to judgment as a matter of law on Plaintiff's procedural due process claim because there are no genuine issues of material fact and Plaintiff has not been deprived of a protected property interest.

1.  **Standing**

Plaintiff has standing to pursue her procedural due process claim.[3]  Plaintiff roots her standing to sue in her exclusion by TDHS from her facilities while children are present despite being "given no predeprivation notice or opportunity for a hearing." (ECF No. 1 at PageID 6.) She also alleges that due to her exclusion, she has had to rent out space to live during her facilities' hours of operation, since her business doubled as her home. (*Id.* at PageID 20.)  Taken together, these allegations are sufficient to establish an injury-in-fact that is traceable to Defendants.  The facts of this case also indicate that Plaintiff's alleged "injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561–62 (explaining that if the plaintiff is an "object" of the governmental action he is challenging, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it").

---

[3] Standing and the merits of Plaintiff's procedural due process claim are separate inquiries. While the Court ultimately finds that Plaintiff's procedural due process claim must fail because she lacks a protected property interest, this deficiency does not strip Plaintiff of standing. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 292 (6th Cir. 2006) (finding that the district court improperly conflated standing and the merits of the plaintiff's due process claim when it held that the plaintiff lacked standing because it lacked a protected property interest), *overruled on other grounds as recognized by Davis v. Prison Health Servs.*, 679 F.3d 433, 442 n.3 (6th Cir. 2012). *See also Baber v. Charter Twp. Of Springfield, Mich.*, 31 F.4th 382, 390 (6th Cir. 2022) (quoting *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021)) ("[J]ust because a plaintiff's claim might fail on the merits does not deprive the plaintiff of standing to assert it . . . . If that were the test, every losing claim would be dismissed for want of standing).

## 2. Protected Property Interest

In evaluating a procedural due process claim, "the first issue is whether the [plaintiff] [was] deprived of a [protected] property interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). A plaintiff must demonstrate that he possessed a protected property interest before a court will decide whether he was deprived of that interest and, if he was so deprived, whether the government afforded him appropriate process. *Id.* (citing *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)). An individual's "[p]roperty interests 'are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Ramsey v. Bd. Of Educ. Of Whitley Cnty., Ky.*, 844 F.2d 1268, 1271 (6th Cir. 1988) (quoting *Bd. Of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Both the Fourteenth Amendment's Due Process Clause and Article I § 8 of the Tennessee Constitution "provide procedural protections for property and liberty interests against arbitrary governmental interference." *Cunningham v. Bedford Cnty.*, No. M2017-00519-COA-R3-CV, 2018 WL 5435401, at *8 (Tenn. Ct. App. Oct. 29, 2018). Protected property interests vary, but "they share the common characteristic that they are an individual entitlement, grounded in state law, that cannot be removed except 'for cause.'" *Martin v. Sizemore*, 78 S.W.3d 262 (Tenn. Ct. App. 2001). To warrant constitutional protection, the interest "must be more than a 'unilateral expectation' or an 'abstract need or desire.' It must be a 'legitimate claim of entitlement' . . . ." *Id.* at 262 (quoting *Roth*, 408 U.S. at 577). "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due

10

Process Clause." *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1 (1978) (quoting *Roth*, 408 U.S. 564, 577 (1972)).

A license to practice a particular profession may constitute a protected property interest. *See Martin*, 78 S.W.3d 262 at 263 (citing cases in which Tennessee courts found protected property interests in licenses to practice medicine, chiropractic, dentistry, and pest control). Whether a plaintiff possesses "a legitimate claim of entitlement" to the continued enjoyment of a license depends on the amount of discretion state authorities have to revoke it.[4] A plaintiff has "no legitimate claim of entitlement to a discretionary decision." *Cunningham*, 2018 WL 5435401, at *8 (citing *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000)).

### A. Parties' Arguments

The Parties define the potential protected interest differently. Plaintiff contends that she has a protected property interest in her licenses to operate her child care facilities. (ECF No. 69-1 at PageID 812.) She denies that TDHS had unconstrained discretion to deny her licenses, and contends that the licenses qualify as a protectible property interest because they "were renewable annually, conditioned only on regulatory compliance and payment of any monies owed to the State." (ECF No. 69-1 at PageID 813.)

Defendants counter that Plaintiff has not been denied licensure and otherwise has no protected interest. If she did, it could only be in her ability to work at her child care facilities pending the outcome of her appeal. (ECF No. 63-2 at PageID 730–34.) And, Defendants argue, Plaintiff had no more than a "unilateral expectation" that she would be permitted to work during

---

[4] *See Martin*, 78 S.W.3d 262 at 263 (citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979)) ("A professional license, issued by a State, which can be suspended or revoked only upon a showing of cause is a constitutionally protectable property interest because the holder of the license has a clear expectation that she will be able to continue to hold the license absent proof of culpable conduct.").

11

that time because TDHS regulations, as permitted by federal law, required she be excluded pending such an appeal. (ECF No. 63-2 at PageID 733.)

### B. Plaintiff Lacks a Protected Property Interest

#### 1. Plaintiff Lacks a Protected Property Interest in Being at Her Facilities While Children are Present

Plaintiff has not lost her licenses to operate her facilities. (*See* ECF No. 69-1 at PageID 815 (acknowledging that "Plaintiff has maintained her licenses, through annual renewals, since September 4, 2018").) What she has lost is her ability to access her facilities while children are present. The reason for that loss was not a revocation of her licenses, however, but rather the abrogation of her eligibility for a criminal exclusion waiver that would allow her to work in the facilities at certain times.

The Court agrees with Defendants that to the extent Plaintiff possesses a protected property interest, it was in her authorization to be at her child care facilities while children were present pending the conclusion of her administrative appeal. This is because res judicata precludes Plaintiff from relitigating her contention that she was impermissibly excluded from her facilities after her appeal had concluded. Res judicata "rests at bottom upon the ground that the party to be affected . . . has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 797 n.4 (1996). This concept is "intended to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). While res judicata is routinely applied to decisions of state courts, courts have also applied it to decisions by administrative agencies. *See id.* (quoting *United States v. Utah Const. & Mining Co.*, 384 U.S. 394 (1966))

("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose"); *Burkholder v. Bower Tiling Serv.*, No. 93-3115, 1995 U.S. App. LEXIS 218, at *5 (6th Cir. Jan. 5 1995) ("*Res judicata* and collateral estoppel generally apply to quasi-judicial decisions made by administrative agencies from which no appeal has been taken").

Here, Plaintiff had an opportunity to litigate whether her prior conviction constituted an offense for which she was properly excluded from her facilities. That proceeding was a trial type hearing at which Plaintiff submitted multiple exhibits and took witness testimony. (ECF No. 63-4.) *See Drummond*, 126 F.3d 837 at 841 ("Res judicata applies in an administrative law context following a trial type hearing"). It is undisputed that Plaintiff did not seek review of the hearing officer's Initial Order, and thus it became a Final Order of which she also declined to seek review. The officer's determination that Plaintiff's felony conviction for assault with a deadly weapon constituted an offense that could not be waived under federal law is therefore subject to preclusive effect and the Court accepts that the law bars Plaintiff from working in her facilities after the conclusion of her appeal. (*Id.* at PageID 730.) Plaintiff has no protected interest in working in a facility that receives federal funding conditioned upon preventing access to children by individuals with her criminal history.

The Court is left with the question of whether Plaintiff had a "legitimate claim of entitlement" to her ability to access her facilities pending her appeal.[5] She did not. Neither

---

[5] Plaintiff suggests that her procedural due process claim cannot be limited to the pendency of her appeal because "[h]er due process claim includes the fact that she was denied any pre-deprivation notice or hearing. (ECF No. 69-1 at PageID 813.) The Court is unsure what period of time Plaintiff would have it consider prior to her appeal, though, since she was permitted

13

federal nor state law provides Plaintiff with such a right. The federal regulation implementing the CCDBG Act explicitly left to the states the decision whether to permit employment of staff members during their appeals. 81 Fed. Reg. 67438 (Sept. 30, 2016) ("The [CCDBG] Act does not address the obligations of child care providers while staff members or prospective staff members are engaged in the appeals process . . . . States are responsible for determining the most appropriate obligations for providers during the appeals process."). Tennessee elected not to permit continued employment during the appeals process. TENN. COMP. R. & REGS. 1240-04-03-.07(9)(f). Given these facts, Plaintiff could not have had a "unilateral expectation" of being present at her facilities much less a "legitimate claim of entitlement" to such presence. Plaintiff's procedural due process claim thus fails at the first step.

## 2. Plaintiff Lacks a Protected Property Interest in Her Licenses

For the sake of completeness, the Court rejects Plaintiff's argument that she has a protectible interest in her licenses. The Court recognizes that courts may consider a license to practice one's profession a protected property interest in certain circumstances. *See, e.g.*, *Hasanaj v. Detroit Pub. Schs. Comm'y Dist.*, 35 F.4th 437, 453 (6th Cir. 2022) (teaching certificate); *Barry v. Barchi*, 443 U.S. 564 (1979) (horse trainer's license); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (driver's license); *Wojcik v. City of Romulus*, 257 F.3d 600, 609–10 (6th Cir. 2001) (Michigan liquor license). It is also clear that Plaintiff is similarly claiming a protected property interest in her *licenses*—even though she has not lost her licenses—and not in a criminal exclusion waiver (ECF No. 27 at PageID 481); however, Plaintiff has not shown she had a "legitimate claim of entitlement" to her licenses at the time TDHS excluded her from her

---

access to her facilities before receiving her exclusion letter, and since Plaintiff began her appeal process the same day she received her exclusion letter. (*See* ECF No. 1 at PageID 6.)

facilities.  First, as much as she would like to pretend otherwise, it is significant that this Plaintiff is required to approach licensure from a different posture than the plaintiffs in other cases. Because of her former convictions, Tennessee law has always required Plaintiff to successfully obtain a waiver to receive and maintain her licenses, and TDHS has broad discretion in this respect.  The breadth of that discretion is evident in the plain language of the relevant statute which provides that "[t]he department *may* by rule provide for a review process that utilizes an *advisory* group . . . to consider and, *if appropriate*, *recommend* to the department exemptions from the exclusions . . . that are based on the person's criminal background . . . ."  TENN. CODE ANN. § 71-3-507(f)(1) (emphases added).  Plaintiff "cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary," *Med. Corp.*, 296 F.3d 404 at 409 (citing *Richardson*, 218 F.3d at 517), meaning she cannot claim entitlement to her discretionary criminal exclusion waivers.  If Plaintiff was never entitled to a discretionary waiver, and if she was required to receive that waiver to be eligible for a license, then it follows that Plaintiff cannot establish "a legitimate claim of entitlement" to a license sufficient to establish a protected property interest for purposes of her procedural due process claim.

Plaintiff disagrees that TDHS had discretion to revoke "the benefits of her licenses." (ECF No. 69-1 at PageID 813.)  She argues this is so because the state regulation provides that a child care "agency shall maintain a license upon demonstration of . . . [c]ompliance history throughout the licensing period; [p]ayment in full of all assessed civil penalties and other monies owed the state; and [s]ubmission of required documentation, including required annual inspections, as determined by [TDHS]," and because she has not failed to demonstrate any of these requirements.  (*Id.*; TENN. COMP. R. & REGS. §1240-04-01-.04(1)( c).)  The Court is

15

unpersuaded for three reasons. First, TDHS has not revoked Plaintiff's licenses. Second, her argument seems to conflate the question of whether she possessed a protected interest in the first place with the question of whether she suffered a "deprivation" of that interest for purposes of the Fourteenth Amendment. The latter question, which would consider the extent to which Plaintiff lost "the benefits of her licenses," is the second stage of the procedural due process inquiry, however—not the first.[6] Third, Plaintiff lacked a "clear expectation that she [would] be able to continue to hold the license[s] absent proof of culpable conduct" at the time of her exclusion anyway. *Martin*, 78 S.W.3d at 262–63. It is true that TDHS had granted Plaintiff three discretionary criminal exclusion waivers by the time it excluded her from her facilities on September 4, 2018. But at most, these past grants gave Plaintiff a "unilateral expectation" that she would continue to receive these waivers. "Past use, however, cannot form the basis of a property interest absent a legitimate claim of entitlement arising from statute, regulation, contract, or other independent source." *Sisay*, 310 F. App'x. at 84 (finding that taxi drivers' past use of an airport's outbound queue gave them "[a]t most . . . a 'unilateral expectation' based, in part, on the City's having impliedly consented to [their] use of the queue in the past"). *See also Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981) (quoting *Leis v. Flynt*, 439 U.S. 438,

---

[6] Because Plaintiff retains her licenses, she would need to demonstrate that her exclusion by TDHS completely destroyed their value. *Med. Corp.*, 296 F.3d at 413 (quoting and applying *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)) ("[C]ourts have typically recognized indirect injuries to the value of property as constitutional 'deprivations' only 'when such indirect injuries *effectively render the property valueless.*'"). *See also Hasanaj*, 35 F.4th at 453–53 (6th Cir. 2022) (noting that the plaintiff still retained a valid license in which he had a protected property interest but holding that he was not "deprived" of it when he received three ineffective ratings and was terminated from employment). Even then, however, "[i]t was not decided in *Med. Corp.* that a *due process claim* may be based upon the indirect loss in the value of a license . . . . Ordinarily, due process protections are not accorded to persons who are indirectly affected by government action." *Sisay v. Smith*, 310 F. App'x. 832, 842 (6th Cir. 2009).

16

444 n.5 (1979)) ("A constitutional entitlement cannot 'be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past'"). Further, by the time of her exclusion, TDHS had put Plaintiff on notice that "[b]eginning August 30, 2018," TDHS was making changes to its criminal exclusion waiver process such that convictions for felonies consisting of physical assault or battery were no longer eligible for a waiver. (*See* ECF No. 1 at PageID 42.) The record does not provide a basis on which Plaintiff can establish an expectation of continued licensure sufficient to establish a protected property interest under the law.

B.  **Declaratory Judgment**

Plaintiff challenges 42 U.S.C. § 9858f and 45 C.F.R. § 98.43, claiming that they are unconstitutional as applied to her and seeking declaratory relief pursuant to the Declaratory Judgment Act. (ECF No. 1 at PageID 23.) That Act allows a federal court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The existence of an 'actual controversy' in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1968)). In analyzing whether an "actual controversy" exists, "basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc., v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Plaintiff also "must 'demonstrate actual present harm or the

significant possibility of future harm'" to have standing to seek declaratory relief. *Werner v. Primax Recoveries, Inc.*, 365 F. App'x 664, 668 (6th Cir. 2010) (quoting *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006)). "In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing." *Ferry*, 471 F.3d at 643. A court has broad discretion in determining whether to issue declaratory judgment. *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014).

Here, Defendants argue that Plaintiff lacks standing because she cannot demonstrate the requisite harm, since Plaintiff's exclusion pending her appeal ended upon the conclusion of her appeal, and since the result of that appeal requires her exclusion under the CCDBG Act. (ECF No. 63-2 at PageID 734–35.) Plaintiff contends that she has standing to seek declaratory relief because she "continues to be harmed by the official capacity Defendants, . . . who are curtailing both her licenses and the use of her real estate in derogation of her constitutionally protected property rights . . . ." (ECF No. 69-1 at PageID 822.)

The Court does not find it appropriate to exercise its discretion to issue declaratory judgment under 28 U.S.C. § 2201(a) in this matter. Plaintiff's alleged past injury—her initial exclusion from her facilities pending her appeal and up to this point—is insufficient on its own to confer standing to pursue declaratory relief. *Ferry*, 471 F.3d at 643. Regarding Plaintiff's continued exclusion, there is no longer a "dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts," which is required for a declaratory judgment to issue. *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 969 (6th Cir. 2009) (quoting *Ashcroft v. Mattis*, 431 U.S. 171, 172–73 (1977)). While Plaintiff is still experiencing the effects of the dispute she had with Defendants (her exclusion), the Court has already reached a determination as to that dispute, meaning there is no longer a live "case or

controversy" "of sufficient immediacy" on which to base a declaratory judgment. The Court also notes that Plaintiff is no longer seeking injunctive relief, so it is unclear what redress a declaratory judgment order would provide. For these reasons, the Court does not find it appropriate to exercise its discretion to issue declaratory judgment.

C.      **Attorney's Fees Pursuant to 42 U.S.C. § 1988**

42 U.S.C. § 1988(b) authorizes the Court, in its discretion, to award a reasonable attorney's fee to the prevailing party in an action to enforce a claim brought pursuant to § 1983 (among other sections). As Plaintiff has not prevailed on her claims, however, she is not entitled to attorney's fees under § 1988.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED**, this 20th day of December, 2022.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE